IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 25-cr-00184-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

RAQUAN JOHNSON,

       Defendant.

---

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

---

Defendant, Raquan Johnson, by and through undersigned counsel, Summer Woods, moves this Court to suppress all evidence obtained during and derived from the unlawful seizure of Mr. Johnson on May 4, 2025.

### I.      Background

On May 4, 2025, at 3:33 a.m., Aurora Police Department officers were dispatched to 6377 N. Netherland Court for a reported fight in a residence. (Ex. 4, INV_221.).[1] The caller reported that there was a fight in his home between his father and several women. When asked if there were any weapons involved, the caller said one of the women had a pistol but did not use it. One minute later, he described the person who had the pistol as a "tall black male with dreads wearing all black." (Ex. 4, INV_222). He then reported that all parties had left the residence.

---

[1] Citations are to the Bates stamped page number from discovery (INV_), attached herein as Ex. 4 and to the time signature on officer's body worn cameras (Video INV_), which will be submitted as conventional exhibits 1 through 3. The body worn camera exhibits ("BWC") only contain relevant excerpts to this motion from the officer's recordings.

Officer Kudela[2] was the first to arrive on scene with his partner at 3:40 a.m. (Ex. 1, Video INV_298 at 8:11). Prior to his arrival, he reviewed the dispatch report[3] as it came in with his fellow officers – specifically that the individual with a pistol was a "black male tall with dreads, last seen wearing all black clothing." (Ex. 1, Video INV_298 at 01:04-2:23). Upon arrival, officers observed a gray truck legally parked outside of the residence near the curb. It was not turned on and contained 3 occupants, including Mr. Johnson in the driver's seat, his girlfriend in the passenger seat, and his friend in the backseat. Multiple police cars pulled up next to Mr. Johnson with their lights activated. (Ex. 1, Video INV_298 at 8:11). Within two seconds of their arrival, Officer Kudela ordered the vehicle occupants to "let me see hands, let me see hands." (*Id.* at 8:13-8:51). Mr. Johnson pushed the car door open slightly and complied with orders to put his hands up. With the door open, Officer Kudela could easily see that Mr. Johnson did not meet the description of the person with a firearm. Mr. Johnson was not wearing all black – he was wearing a red and black polo and bright yellow pants. Mr. Johnson also does not have dreads. He has short hair, which was clearly visible at all times to officers:

---

[2] A portion of Officer Kudela's BWC is submitted as Ex. 1, INV_298 (Clip 00:00-13:00).
[3] Ex. 4, INV_221-222.



(Ex. 1, Video INV_298 at 8:22, showing Mr. Johnson's hair and clothing).

Officers asked Mr. Johnson if anyone had a gun on them and he answered no. (*Id.* at 8:25). Despite that and despite Mr. Johnson not matching the description, Officer Link[4] aggressively ordered all three occupants out of the car to pat them down. (Ex. 3, Video INV_300 at 00:20-42) ("Like I said, everyone is coming out of the car and we are patting you down. Do you understand?"). Officer Kudela then spotted someone who actually matched the description – a black man wearing all black with dreads exit the house and went over to speak with him:



---

[4] A portion of Officer Link's BWC is submitted as Ex. 3, INV_300 (Clip 7:20-11:20).

(Ex. 1, Video INV_298 at 8:57, showing another male on scene who matched the description).

Officer Aspras[5] and his partner remained with Mr. Johnson. (Ex. 2, Video INV_299 at 0:51). Mr. Johnson asked Officer Aspras for a moment to help calm his girlfriend down, who was in the passenger seat. (*Id.*) Throughout the encounter, Mr. Johnson's hands were raised and visible to officers. After a moment, Officer Aspras put his hand on Mr. Johnson's shoulder, ordered him to put his hands on his head, grabbed his other arm, and removed him from the vehicle. (*Id.* at 2:09-2:22). Mr. Johnson was compliant with all orders.



(Ex. 3, Video INV_300 at 2:13, showing Mr. Johnson being forcibly removed from the vehicle).

Officers immediately began patting him down and searching for weapons. (*Id.* at 2:22-2:40). An officer located and removed a firearm from Mr. Johnson's waistband, handcuffed him, and placed him in the back of a police car.

---

[5] A portion of Officer Aspras's BWC is submitted as Ex. 2, INV_299 (Clip 8:05-12:00).

After Mr. Johnson was arrested, officers searched him and his vehicle. They located drugs in a backpack in the rear driver's seat of the vehicle and an additional firearm in the center console. Based on the firearms, the federal government later indicted him on one count of possession of a firearm. Doc. 1. He now moves to suppress that evidence as the product of an unlawful seizure.

## II. Argument

The Fourth Amendment to the United States Constitution "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. Amend. IV). The "principal judicial remedy to deter Fourth Amendment violations" is the exclusionary rule, which "often requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 579 U.S. 232, 237 (2016).

### A. The officers did not have reasonable articulable suspicion to warrant the initial detention of Mr. Johnson.

Investigative detentions are seizures under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1 (1968). "A seizure by means of an investigative detention is constitutional only if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). An officer who "stops" and briefly detains a person for questioning "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. While an investigative detention does not require probable cause, it does demand "something more than an inchoate and unparticularized suspicion or "hunch." *Davis*, 94 F.3d at 1468; *quoting United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994). Ultimately, "the government bears the burden of proving the reasonableness of the officer's suspicion." *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017).

Mr. Johnson was seized by officers the moment they arrived on scene. Whether a police-citizen encounter constitutes a seizure depends on "a consideration of all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1995); *United States v. Hernandez*, 847 F.3d 1257, 1264 (10th Cir. 2017) (listing non-exhaustive factors the court should consider when determining if a reasonable person would feel free to terminate his encounter). While officers are allowed to approach an individual and ask them questions, "a defendant must be able to decline to listen and go on his way." *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). It should be uncontested that this was not a consensual encounter. Multiple police vehicles pulled up beside Mr. Johnson's vehicle. Mr. Johnson was quickly surrounded by multiple officers. Within 2 seconds, officers ordered him to put his hands up and pulled his car door open. Within 14 seconds, officers told Mr. Johnson and the other vehicle occupants that they were all going to step out of the car and be patted down (frisked.). When the passenger asked "Why?", officers responded that they were not going to let them out of there until they searched them. Mr. Johnson was not permitted to decline to listen to officers. He certainly was not permitted to go on his way – he was ordered out of his vehicle.

While reasonable suspicion depends on the totality of the circumstances, not a single factor here was sufficient to justify an investigative detention. *See United States v. Sokolow* 490 U.S. 1, 8-10 (1989). The 10th Circuit requires sufficiently more facts than what officers had in this instance to uphold an investigative detention based on information provided from a 911 call. *See e.g. United States v. Copening*, 506 F.3d 1241 (10th Cir. 2007) (five separate 911 calls identified defendant with a firearm as "bald, black man" and gave a specific description of his vehicle, including the

6

license plate); *United States v. Conner*, 699 F.3d 1225 (10th Cir. 2012) (defendant matched description in 911 call that identified light-skinned black male wearing a fuzzy hunter hat had exited his black SUV and placed a pistol in his waistband, also gave specific location of the vehicle); *United States v. Williams*, 646 Fed. Appx. 624 (10th Cir. 2016) (defendant matched description in 911 call that reported that man at bar had pulled a gun on another person, described him as a light-skinned black male about 5'9, 140 lbs, wearing a red baseball hat with a star on it and a black jacket or sweatshirt with a hood, maybe a ponytail.). Most importantly – caselaw requires the defendant to *match* the description given on the 911 call.

The 911 caller here described the individual with a firearm as "black male, tall with dreads, last seen wearing all black clothing," that he had last seen inside of the residence. While that description would be sufficient to detain a black male with dreads wearing all black clothing – Mr. Johnson was not that person. Here, Mr. Johnson was sitting in his vehicle outside of a residence. Nothing about the information provided in the 911 call said anything about a vehicle description. Mr. Johnson did not match the description provided in the 911 call. While he is a black man, he was not wearing all black clothing. He was wearing bright yellow pants that were immediately visible to police officers. Bright yellow pants are quite distinctively different than "all black," meaning black pants. Mr. Johnson also does not have dreads – his hair was short and curly. Again, quite distinctive from "dreads." Additionally, nothing Mr. Johnson did in the officer's presence gave them reasonable suspicion to justify the detention. The vehicle was turned off. Officers ordered him to put his hands up within 2 seconds of exiting their vehicle. Mr. Johnson immediately complied with officers and put his hands up where they remained visible. There was no indication from any of the vehicle occupants that could be portrayed as suspicious or problematic. Most importantly – none of the occupants of the vehicle matched the specific description officers had

7

when they arrived on scene.  The only thing that Mr. Johnson had in common with the description is that he is a black male. That cannot be a sufficient basis to detain him.

B. <u>Even if the initial investigative detention was valid, officers did not have articulable and reasonable suspicion that Mr. Johnson was armed and dangerous to justify a protective search.</u>

In the course of a valid investigative detention, an officer may conduct a limited protective search ("frisk") if the officer harbors an articulable and reasonable suspicion that the person is armed and dangerous. *Davis*, 94 F.3d at 1468; *citing United States v. King,* 990 F.2d 1552, 1557 (10th Cir.1993); *United States v. Santillanes,* 848 F.2d 1103, 1108 (10th Cir.1988). This heightened requirement stems from the fact that a pat-down search, while brief, is a "frightening" and "humiliating" experience. *Terry*, 392 U.S. at 24-25. It is "a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Id.* at 17-18. "Inchoate suspicions and unparticularized hunches do not provide reasonable suspicion." *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010).

The initial investigative detention was not lawful; however, assuming *arguendo* that it was, there is no evidence whatsoever to support a suspicion that Mr. Johnson had a firearm on his person to justify officers pulling him out of his car and searching him. An officer must have reasonable suspicion a subject is both "dangerous" and has ready access to a weapon. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). They had neither here. There was no indication Mr. Johnson had access to a weapon. The officers did not observe a firearm, they did not observe any suspicious bulge in Mr. Johnson's pockets, and he did not appear to be hiding anything or making furtive movements in the car – in fact, his hands remained up and in view of the officers the entire time he was in the vehicle. He did not attempt to evade officers, flee the scene, or refuse to get out of the car. Rather, he listened to officers and encouraged the two passengers in the vehicle to do the same.

To be clear – Mr. Johnson did not match the description provided by the 911 caller. But law enforcement also had no information that any male on scene (including Mr. Johnson) was dangerous. The information received by officers was that females were involved in a physical altercation inside the residence. There was no connection to the firearm or any allegations that a firearm had been used – the caller only advised dispatch that someone (not involved in the altercation) had a weapon when specifically asked about weapons by the call taker. (Ex. 4, INV_221.). There was no information whatsoever that the person with the firearm was dangerous and threatening to use it. If the government were to argue that once they frisked the black man wearing all black with dreadlocks that matched the description from the 911 call and did not find a weapon on him, that justified a search of Mr. Johnson, that argument fails. (Ex. 1, Video INV_298 at 8:51-10:35). First, Mr. Johnson had already been unlawfully detained at the time they spotted the male coming out of the residence. Second, the determination that someone else at the scene did not have a weapon does not give police reasonable articulable suspicion that Mr. Johnson is armed and dangerous. The law requires reasonable, articulable suspicion as it goes to Mr. Johnson – not someone in the area. They did not have that. Their detention and subsequent protective search of Mr. Johnson was unlawful.

### III. Conclusion

Mr. Johnson was unlawfully seized when law enforcement jumped out of their cars and immediately ordered him to put his hands up when he was seated in his vehicle. This alone requires this Court to suppress the evidence subsequently obtained. Additionally, within two minutes, law enforcement pulled Mr. Johnson out of his vehicle and frisked him for weapons – despite having no evidence whatsoever that he was armed and dangerous. As such, law enforcement's recovery

9

of the firearm on his person was unlawful and this Court must suppress its use in future court proceedings against Mr. Johnson.

All incriminating statements, consents to search, and other incriminating evidence flowing from the illegal detention, *Terry* pat-down, and "protective search," to include Mr. Johnson's statements, the search of his vehicle, and the additional evidence found in his vehicle must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487-488 (1963).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

*/s/ Summer Woods*
SUMMER WOODS
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Summer_Woods@fd.org
Attorney for Defendant Raquan Johnson

CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I filed the foregoing ***Defendant's Motion to Suppress Evidence*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address and all parties of record:

Leah Marie Perczak, Assistant United States Attorney
E-mail: leah.perczak@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Raquan Johnson (*held on file*)

/s/ Summer Woods
SUMMER WOODS
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Summer_Woods@fd.org
Attorney for Defendant Raquan Johnson

11